IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 0190 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dawn W.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 18] is granted in part, and the Commissioner's motion for summary judgment [Doc. No. 25] is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On May 15, 2013, Plaintiff filed her application for DIB, alleging disability since November 1, 2011 due to a decompressed colon, two lesions on her liver, bone

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

spurs on her spine, pain in both wrists and elbows, pseudarthrosis of right lateral elements, and anxiety. (R. 88, 109, 197.) Her application was denied initially and again upon reconsideration. (R. 88, 104–14.) Plaintiff requested a hearing, which took place before an Administrative Law Judge ("ALJ") on June 1, 2015. (R. 37–78, 115–18.) Plaintiff, represented by counsel, testified, as did a medical expert ("ME") and a vocational expert ("VE"). (R. 37–39, 43–77.) On August 3, 2015, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (R. 13–35.) The Appeals Council denied review on November 8, 2016. (R. 1–5.)

## II. ALJ DECISION

In finding Plaintiff not disabled, the ALJ analyzed her claim according to the five-step sequential evaluation process established under the Social Security regulations. (R. 16–18); *see* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date, November 1, 2011, through her date last insured, September 30, 2014 (the "Relevant Period"). (R. 18.) At step two, the ALJ found that during the Relevant Period, Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine; bilateral epicondylitis; degenerative joint disease of the right shoulder (status post decompression surgery); and tachycardia. (*Id.*) The ALJ also found that Plaintiff's anxiety and depression were non-severe mental impairments. (R. 18–20.) At step three, the ALJ determined that, during the Relevant Period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

2

severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") during the Relevant Period to perform "light work" as defined in 20 C.F.R. § 404.1567(b), subject to several additional limitations.[2] (R. 20–21.) At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a dispensing optician (DOT code 299.361-010), cosmetology instructor (DOT code 097.221-010), and bartender (DOT code 312.474-010) during the Relevant Period, and therefore she was not disabled. (R. 29–30.)

## **DISCUSSION**

### **I. ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in

---

[2] The ALJ further limited Plaintiff as follows:

> [Plaintiff] could not climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and craw[l]. She could frequently reach in all directions with the left upper extremity. [Plaintiff] could engage in bilateral overhead reaching. She needed to avoid all exposure to dangerous machinery. She could not engage in commercial driving. She was able to perform work at a variable or flexible pace, involving only end of the day production requirements, and with no other periodic or hourly production quotas.

(R. 20–21.)

3

the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation (i.e., past work)? and (5) Is the plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden shifts to the Commissioner to show that the plaintiff can engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II. JUDICIAL REVIEW

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind

4

might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" so long as "the decision is adequately supported") (internal citation and quotations omitted).

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning.") (internal citations omitted).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even so, an ALJ

5

must consider all relevant evidence, and he cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff challenges the ALJ's decision on a number of grounds. The Court finds that remand is necessary because the ALJ failed to sufficiently account for Plaintiff's mild mental limitations when assessing her RFC.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). This includes mental limitations, as "'[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work.'" *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (alterations in original) (quoting 20 C.F.R. § 404.1545(c)). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

Here, the ALJ found that Plaintiff's anxiety and depression were non-severe mental impairments that reduced Plaintiff's concentration and caused mild limitations in two functional areas: social functioning and concentration,

6

persistence, or pace. (R. 18–19.) The ALJ's RFC assessment does not expressly refer to Plaintiff's limitations in these functional areas; however, the ALJ later explained that he accommodated Plaintiff's depression and anxiety by restricting her to working "at a variable or flexible pace" with only end-of-day production requirements and "no other periodic or hourly production quotas." (R. 20–21.) Thus, it appears the ALJ intended for these pace and quota restrictions to accommodate any limitations arising from Plaintiff's depression and anxiety, which includes her mild limitations in social functioning and concentration, persistence, or pace.

Despite the ALJ's intentions, the Court does not believe his RFC assessment sufficiently addresses Plaintiff's limitations in either functional area. Defining the pace at which Plaintiff must work and the quotas she must meet does nothing to address her capacity for social functioning, which involves the ability to get along with others. *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1066 (N.D. Ill. 2011). Thus, to accommodate limits on social functioning in a workplace environment, an RFC might restrict an individual's ability to interact with or be around supervisors, co-workers, or the public. The RFC here, though, does not limit or even touch upon Plaintiff's ability to interact with anyone. (R. 20–21.)

In addition, Plaintiff's difficulties with concentration, persistence, or pace are not adequately addressed by the ALJ's RFC assessment. An individual with issues concentrating, persisting, or maintaining pace may have problems meeting daily production requirements, even if they are deferred to the end of the day. And although the RFC precludes "periodic or hourly" quotas and does not require

7

Plaintiff to work at a fast or any other particular pace (only a "variable or flexible pace" is required), "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including" limitations in concentration, persistence, and pace. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).[3] Indeed, requiring a plaintiff to meet end-of-day requirements without keeping a particular pace throughout the day envisions "a tortoise-and-the-hare scenario in which [the] plaintiff would be unable to keep pace consistently throughout the day but could somehow catch up later in the day," and the ALJ did not point to anything in the record suggesting that Plaintiff would have such "bursts of productive energy" throughout the day. *See Novak v. Berryhill*, No. 15 C 50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017).

The Commissioner does not argue that the ALJ's pace and quota restrictions adequately capture Plaintiff's mild limitations in social functioning and concentration, persistence, or pace; instead, she contends that the ALJ was not required to include *any* mental RFC limitations. [Doc. No. 26 at 5–6.] The Commissioner reasons that because the ALJ found that Plaintiff's mental symptoms

---

[3] Although *DeCamp* did not specifically address mild limitations in concentration, persistence, or pace, it found the ALJ's elimination of "fast-paced production line or tandem tasks" insufficient to accommodate the plaintiff's "*mild* limitations in understanding, remembering, and carrying out simple instructions," as well as her moderate limitations in concentration, persistence, and pace. 916 F.3d at 675–76 (emphasis added). This suggests that whether an RFC restriction can "serve as a proxy" for an individual's limitations in a functional area does not depend on the degree of the limitation (*e.g.*, mild or moderate). Whether an individual's difficulties with concentration, persistence, or pace are mild or moderate, the same underlying ability—sustaining "focused attention and concentration sufficiently long [enough] to permit the timely and appropriate completion of tasks commonly found in work settings"—is affected by those difficulties. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00C(3) (Aug. 12, 2015 to Apr. 28, 2016).

8

were caused by her pain and physical impairments (rather than by mental illness), Plaintiff could control those mental symptoms by controlling her pain and physical limitations. Therefore, the ALJ sufficiently accounted for Plaintiff's mental limitations when he accommodated her pain and physical impairments with a reduced range of light work.

The Commissioner's reasoning is flawed, though, because it assumes that Plaintiff can "control" her mental symptoms simply by controlling her pain and physical limitations.[4] But Plaintiff's anxiety and depressive symptoms did not stem *solely* from her pain and physical impairments. Instead, the ALJ found that Plaintiff's mental symptoms were caused by physical issues *and* non-physical issues:

> I agree with the State agency doctor . . . who opined that "it is reasonable for this claimant to experience some anxiety symptoms, *secondary to financial issues/life circumstances* as well as physical issues." She also opined that the claimant's limitations are more related to physical and *life circumstance issues* rather than to [sic] due to a severe mental disorder.

(R. 18–19) (emphases added; record citation omitted). Thus, even if Plaintiff's pain and physical issues were accommodated with a reduced range of light work, that would not necessarily eliminate the financial issues and life circumstances that also cause Plaintiff's mental limitations.

Although the RFC need not expressly refer to Plaintiff's mild difficulties with social functioning and concentration, persistence, or pace, it "must clearly exclude

---

[4] It is unclear how an individual can "control" her physical limitations, but the Court assumes that an individual can do so for the sake of argument.

those tasks" that Plaintiff cannot perform because of those difficulties. *See Paul v. Berryhill*, 760 F. App'x 460, 2019 WL 643261, at *4 (7th Cir. 2019) (unpublished decision). Without more of an explanation from the ALJ, the Court cannot say that the quota and pace restrictions here do so.

The insufficiency of the ALJ's RFC assessment at it relates to Plaintiff's mental impairments is especially critical here because his determination of non-disability was based on Plaintiff's ability to perform her past work as a dispensing optician and a cosmetology instructor—skilled positions—and a bartender, a semi-skilled position. (R. 29, 72.) The inclusion of even mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform skilled and semi-skilled work. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787–88 (N.D. Ill. 2017) (explaining that a mild limitation in concentration, persistence, or pace could impact one's ability to work as a brokerage clerk, which is a skilled position); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (faulting the ALJ for not considering whether the plaintiff's mild limitations in activities of daily living, social functioning, and concentration, persistence or pace affected her ability to perform past skilled work); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (finding that mild limitations in social functioning or in concentration, persistence, or pace could affect one's ability to work as an information clerk, which is a semi-skilled position); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013) (explaining

that mild limitations in concentration, persistence, and pace may preclude semi-skilled or skilled work).

For example, both the Dictionary of Occupational Titles (the "DOT") and common sense indicate that Plaintiff's past positions as a dispensing optician, cosmetology instructor, and bartender all require a threshold ability to interact with and be around others. *See Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 745 (N.D. Ill. 2019) (noting that common sense "has a significant role to play in" Social Security litigation). A dispensing optician sells optical goods to customers and interacts with them to assist in the selection of eyeglass lenses and frames, DOT 299.361-010, 1991 WL 672626; a cosmetology instructor lectures, teaches, and supervises students, DOT 097.221-010, 1991 WL 646924; and a bartender interacts with the public by serving drinks to bar patrons and collecting money from those patrons for drinks served, DOT 312.474-010, 1991 WL 672698. Yet if an individual has problems with being around or interacting with others, it is quite possible that she cannot perform these job responsibilities.

The job responsibilities of Plaintiff's past positions are such that even mild limitations in social functioning and concentration, persistence, or pace could impact her ability to perform these skilled and semi-skilled positions. *See Simon-Leveque*, 229 F. Supp. 3d at 788; *Alesia*, 789 F. Supp. 2d at 933–34; *President*, 2018 WL 4282053, at *3. The VE, however, was not asked any questions reflecting these limitations. (R. 71–77.) Because the ALJ did not account for these limitations in questioning the VE, it is unclear whether Plaintiff is indeed capable of working as a

11

dispensing optician, a cosmetology instructor, or a bartender. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion" that Plaintiff can perform her past work, which prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

Thus, the case must be remanded. *See, e.g.*, *Alesia*, 789 F. Supp. 2d at 933–34 (the ALJ's failure to account for the claimant's mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace necessitated remand); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (same); *see also Hovi*, 2013 WL 3989232, at *16 (explaining that "[c]ourts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand"). On remand, the ALJ shall explicitly evaluate whether the mild mental limitations stemming from Plaintiff's anxiety and depression warrant corresponding mental or non-exertional restrictions. If so, the ALJ shall include those restrictions in his RFC assessment and the hypothetical questions posed to the VE; if not, the ALJ shall explain his conclusion so that a reviewing court can follow the basis of his reasoning. *See Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (explaining that if the ALJ believed that the claimant's mild limitations in certain functional areas "did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning").

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 18] is granted in part, and the Commissioner's motion for summary judgment [Doc. No. 25] is denied. This matter is remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**  **ENTERED:**

**DATE:     May 13, 2019**                    _____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**